IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LARRY MORRISON                                                                    PETITIONER

VS.                                                    CIVIL ACTION NO. 3:15cv23-DPJ-FKB

WARDEN BLACKMON                                                                RESPONDENT

### REPORT AND RECOMMENDATION

Larry Morrison is a federal inmate serving a 210-month sentence for a drug offense. He is incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi. In his petition, Morrison challenges a disciplinary proceeding in which he was found guilty of a violation of the disciplinary code and his resulting loss of 27 days of good time credit. Presently before the Court is Morrison's motion for summary judgment. Having considered the motion, the competent summary judgment evidence of record, and the memoranda of the parties, the undersigned concludes that Morrison is entitled to judgment as a matter of law because the undisputed evidence establishes that his guilty plea was involuntary and that the discipline hearing officer (DHO) for his hearing, DHO Arthur Truex, was not an impartial decision maker.

The facts are as follows. On June 24, 2014, Officer Mattie Stewart, a support technician with Special Investigative Services, completed an incident report charging Morrison with a violation of Prohibited Act Code 299, "most like" code 296. [13-4] at 1. Code 299 prohibits

> [c]onduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another High severity prohibited act. This charge is to be used only when another charge of High severity is not accurate. The offending conduct must be charged as "most like" one of the listed

> High severity prohibited acts.

BOP Program Statement 5270.09, Table 1. Code 296, the "most like" charge in the incident report, prohibits the following:

> Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures (e.g., use of the mail to commit or further a High category prohibited act, special mail abuse; writing letters in code; directing others to send, sending, or receiving a letter or mail through unauthorized means; sending mail for other inmates without authorization; sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person; and using a fictitious return address in an attempt to send or receive unauthorized correspondence).

*Id.* In the report, Officer Stewart stated that on June 24, 2014, while conducting electronic mail monitoring, she had discovered (1) an email sent by Morrison to an outside email address that appeared be intended for another inmate at the facility and (2) an email in Morrison's box from an outside email address that appeared to have originated from Inmate Lamel Diggs.[1]

This incident report was delivered to Morrison the next day.[2] However, it was

---

[1] The Bureau of Prisons provides a service, known as TRULINCS, which allows inmates to communicate by email, without general access to the internet, with persons outside of the prison system. The system apparently does not provide a way for an inmate to send an email directly to another inmate. The emails between Morrison and Diggs concerned a pending legal matter involving Diggs and the situation at the prison in the wake of a power outage. In his petition, Morrison explains that the power outage had resulted in violence and stealing by inmates and that he and Diggs communicated through email rather than in person (which apparently would have been possible) because they did not want to risk leaving their respective units.

[2] The prison disciplinary process begins with the issuance of an incident report prepared by a prison staff person. The report is normally served on the inmate within 24 hours. The next step is the appointment of an investigating officer (a supervisory-level staff member) and an investigation by him. The investigation includes a meeting between the investigator and the inmate at which the inmate is given the

subsequently suspended because of a lack of detail and supporting information. Stewart drafted a second version of the incident report on June 29, 2014. [13-5] This report was delivered to Morrison, and a Unit Disciplinary Committee (UDC) hearing was held on July 7, 2014, after which the UDC referred it for adjudication by the DHO. The DHO expunged this version because of a lack of sufficient supporting information and documentation.[3]

On July 15, 2014, Stewart drafted a third version of the report. [13-2]. This version included copies of several emails sent between Morrison and the third-party and between the third-party and Diggs, as well as a detailed explanation of why Morrison's conduct violated the disciplinary code. A copy of the incident report was delivered to Morrison, and Morrison signed a form indicating that he wished to have Counselor Bravel Moore as his staff representative and that he desired evidence to be obtained and presented from

---

opportunity to make a statement. The inmate has the right to remain silent; however, an adverse inference may drawn against him for doing so. When the investigator has completed his investigation, he records the results of his investigation on the incident report and forwards it, along with any other relevant materials, to the Unit Disciplinary Committee (UDC). If the alleged offense is a low or moderate severity offense, the UDC may make a determination as to guilt. Where the UDC determines that the inmate did not commit the offense, the UDC expunges the report from the inmate's file. Alternatively, it may refer the matter to the Discipline Hearing Officer (DHO). Referral to the DHO is automatic for high severity offenses. Where the matter is referred to the DHO, the UDC advises the inmate of his right to choose a staff representative for the hearing and to request witnesses. Following a hearing, the DHO issues a written decision. The decision may be appealed through the Administrative Remedy Program. *See generally* BOP Program Statement 5270.09 §§ 541.5-541.8.

[3]It is unclear from the evidence which DHO was responsible for expunging this version of the incident report. Morrison contends that DHO Mosley had the report expunged after getting permission from DHO Truex, who, according to Morrison, was the senior DHO.

three witnesses: Lamel Diggs, Elina Metsane (the third-party through whom Morrison and Diggs had routed their emails), and DHO Truex. [13-7]. That same day, the UDC heard the case and forwarded it to DHO Truex, who reopened the incident report. A few hours after the UDC hearing, Morrison was placed in administrative segregation pending his DHO hearing. [1] at 27.

The hearing was held before Truex on July 22, 2014. In response to questions by Truex, Morrison acknowledged that he had received a copy of the incident report and understood it and that he understood his rights with respect to the hearing. [13-3] at 1. Morrison waived his right to a staff representative and witnesses and pleaded guilty to the charges.

Truex issued a written decision on August 19, 2014. [13-3]. He found, based upon the evidence and Morrison's admission of guilt, that Morrison had engaged in the conduct as charged, and he imposed the following sanctions: 30 days in disciplinary segregation, suspended pending 180 days of clear conduct; a 27-day disallowance of good-conduct time; a loss of email privileges for six months; and a loss of visiting privileges for six months. *Id.*

In his petition, Morrison raises the following grounds for relief:[4]

1. His conviction violates due process, as he had no notice that the charged activity was a prohibited act.

2. His right to due process was denied in that his placement in solitary confinement rendered him incapable of preparing a defense.

3. His guilty plea was involuntary.

---

[4]The grounds have been reorganized and restated for clarity.

4

4. His conviction on a third incident report arising out of the same facts as the previously-expunged reports violates the double jeopardy clause.

5. His right to due process was violated because DHO Truex was not an impartial decision maker.

Because the undersigned concludes that grounds three and five are dispositive, these are the only grounds addressed herein.

Where a disciplinary proceeding results in the loss of good conduct time, a prisoner is entitled to certain due process protections that include a hearing before an impartial decision maker. *Wolff v. McDonnell*, 418 U.S. 539. 559-72 (1974). Morrison claims that DHO Truex was not impartial but, rather, that Truex indicated prior to the hearing that he had already determined Morrison's guilt and expressed an intention to find him guilty and to give him a severe sanction. Morrison further contends that Truex coerced him into pleading guilty. In support of these claims, Morrison has submitted his own sworn statement and that of inmate Lamel Diggs.

Diggs apparently was charged with the same code violation as was Morrison. Diggs's case was heard by DHO Truex after Morrison's second incident report was expunged and prior to Morrison's receipt of his third incident report. Diggs states in his affidavit that at his own hearing, his staff representative argued that because Morrison's incident report had been expunged, Diggs should be found not guilty. [19] at 1-2. According to Diggs, Truex responded to the staff representative's argument by becoming angry and stating, "Yes! He got his expunged, I expunged his because he didn't initiate the e-mail, but I am going back and have his incident report reissued and make sure it sticks this time!" [19] at 2. In his own affidavit, Morrison states that at the beginning of his

5

hearing, DHO Truex told him that if he pleaded guilty, he would be released from segregation the next day and that his sanctions would be minimal. [15] at 2. If, on the other hand, he attempted to defend against the charges, as Diggs had done, he would receive the maximum in sanctions. *Id.* Morrison concluded that there was nothing to be gained by attempting to defend against the charge and that he would in fact be better off pleading guilty, in light of Truex's threat that he would remain in segregation and receive a harsher penalty if he did not do so.[5]

"A fundamental component of due process is the right to a hearing before an impartial decision maker who 'does not prejudge the evidence and who cannot say, . . . with utter certainty . . . how he would assess evidence he has not yet seen," *Gonzales v. Johnson*, 994 F.Supp. 759, 763 (N.D. Tex. 1997) (quoting *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990)), or what punishment he would impose, *id.* at 762 (citing *Patterson*). The only reasonable conclusion to be drawn from Truex's statements is that

---

[5]Morrison's documents and filings indicate that after he was placed in administrative segregation, he wrote Truex stating that he wanted to withdraw his requests for a staff representative and witnesses because he was told that unless did so, he would remain in administrative segregation for two months. Apparently two months was the period of time his hearing would be delayed if he wanted a representative, because Counselor Bravel Moore was on paternity leave and unavailable for two months. But Morrison's waiver, *prior to the hearing*, of his rights to a representative and to call witnesses is not necessarily inconsistent with his sworn statements that it was Truex's warnings *at the beginning of the hearing* that caused him to conclude that pleading guilty was his only option. Stated another way, Morrison's earlier decision to waive his rights to a representative and witnesses does not necessarily equate to a decision to waive his right to present a defense - particularly a defense in the form of his own testimony and a legal argument. Indeed, Morrison had previously prepared a lengthy written statement arguing that the code sections cited in the incident report did not forbid the use of an intermediary for emails and did not give fair notice that this activity was prohibited. *See* [1] at 40-41. Morrison could have testified and made these same arguments at the hearing even in the absence of a representative and witnesses.

6

he was not impartial, as he had already decided, prior to the hearing, that he intended to find Morrison guilty no matter what evidence was presented.

Respondent has offered no affidavit from Truex or any other evidence to create a factual issue as to the relevant statements made by Truex during Diggs's hearing and at the beginning of Morrison's hearing.[6] Therefore, the undersigned concludes that Morrison is entitled to judgment as a matter of law on his claims that he was denied an impartial decision maker and that he was coerced into pleading guilty.

Accordingly, the undersigned recommends that Morrison's motion and the petition be granted and that an order be entered directing that Morrison's 27 days of good conduct credit be restored unless he is allowed to withdraw his guilty plea and is given a new hearing before a different hearing officer within 30 days.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual

---

[6]Morrison's petition and affidavit contain other allegations of improper actions taken by Truex. For example, Morrison states that Truex was responsible for his placement in administrative segregation pending his hearing and that Truex's motive for doing so was to prevent Morrison from preparing a defense and to pressure him into withdrawing his requests for a staff representative and witnesses. However, these allegations, even though contained in Morrison's sworn statements, are not competent evidence because there is no indication that they are based upon Morrison's personal knowledge. The only actions of Truex considered by the undersigned in this report and recommendation are his comments reported directly by Morrison and Diggs based on their personal knowledge and in their sworn statements.

findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    Respectfully submitted, this the 19th day of November, 2015.

                                  /s/ F. Keith Ball
                                  UNITED STATES MAGISTRATE JUDGE